*New-London,*
July,
,826.

## INGRAHAM and another *against* WHEELER.

Ingraham
*v.*
Wheeler.

Though a debtor in failing circumstances may lawfully prefer one creditor, or one set of creditors, to another; and may assign his property *in trust* for that purpose; yet if the deed of trust contain a clause, declaring, that no creditor shall be entitled to receive a dividend of the proceeds, who shall not, within a limited time, discharge the assignor from the claim against him, such deed will be deemed fraudulent and void.

An instrument referring to a former deed of trust, which is void by reason of a clause prescribing terms to the *cestuy que trust*, renewing and confirming such deed, exclusive of the exceptionable clause, and assigning the same property, for the same purpose, and giving the same authority to the trustee, not by a specification of such property, purpose and authority, but by terms of reference to the former deed, may have effect as a new and independent instrument of conveyance.

A purchaser of personal property is bound to take immediate possession, where it is practicable, and where it is not, to take possession, or do that which is equivalent. in a reasonable time; his omission to do so, being a badge of fraud.

Where the property assigned is, at the time of the assignment. in the hands of a third person as bailiff, the assignee is entitled to a reasonable time, either to give notice to the bailiff, or to take possession of the property.

Whether an assignee, in any case, has used due diligence in taking possession of the property assigned. is a question of fact to be left to the jury.

Therefore, where *A.*, being in failing circumstances, executed, on the 1st of *May*, a deed of assignment of all his property, in possession and in action, and in whose hands soever it might be, to *B.*, in trust for the creditors of *A.*, with directions to the trustee to pay out of the proceeds the claims of certain creditors named in full, and to apply the residue, should any there be, to the proportionate payment of such other creditors not named. as should, within six months thereafter, execute discharges of their respective claims, it being expressly declared, that no creditor should be entitled to receive a dividend of the proceeds until he should have signed such discharge; on the same day, *A.*'s books and the key of his store were delivered to *B.*; on the 5th of *May*, *A.*, having doubts as to the validity of his assignment, executed a writing, referring to such assignment, and confirming and renewing it, with the exception of the clause requiring a discharge from his creditors, and assigning the same property, for the same purpose. and giving the same authority to the trustee, not by a specification of such property, purpose and authority, but by terms of reference to the former deed; a part of this property being in the possession of *C.* as the bailiff of *A.*, *C.*, on the 6th of *May*, attached it for a just debt against *A.*, having no notice of the second assignment. though he was apprized of *A.*'s failure and of the first assignment; in an action of trover for the property so attached, brought by *B.* against *C.*, it was held, 1. that the first assignment was fraudulent and void; 2. that the instrument executed by *A.*, on the 5th of *May*, was a new and valid assignment; 3. that *B.*, as a *bona fide* purchaser, was entitled to a reasonable time to take possession of the property assigned; and it being established, by the finding of the jury, that there was no unreasonable delay in taking possesion, he was entitled to a recovery.

This was an action of trover, for 6000 yards of domestic cot-

*New-London,* ton goods, tried at *Norwich, January* term, 1826, before *Pe-*
July.
1826.      *ters,* J.

Ingraham
*v.*
Wheeler.

The plaintiffs claimed title to the property in question, by virtue of an assignment from *Andrew Hutchinson;* to establish which, they introduced two instruments.

By the first, dated and executed at *North-Providence,* in the state of *Rhode-Island,* the 1st of *May,* 1824, *Hutchinson* assign-ed and transferred to the plaintiffs all his stock in trade, togeth-er with all the machinery, yarn and other property, of every kind and nature whatsoever, except household furniture and wearing apparel, as well all the property to him belonging, which might be found in the hands and possession of any other person or persons, or in any other place whatever, as those goods and chattels and other property, which were then in his own possession; also, all the claims and demands, which he then had, or might have, against any person or persons, by book account, note, bond or mortgage, or in any other manner whatsoever; being all that was included and specified in a schedule annexed; *to have and to hold* the same to the plain-tiffs, or the survivor of them, and to their heirs and assigns for-ever, subject to the following limitations and conditions: 1st, That the assignees should cause the property so conveyed to them to be sold and disposed of, at public or private sale, according to their discretion, and as they should deem most beneficial for the interest of the parties concerned, and should, with all con-venient dispatch, collect the debts due to *Hutchinson,* and from the proceeds of such sale and collections, should reserve suffi-cient for a reasonable compensation for their services, and for all expenses that might accrue in settling the estate: 2ndly, That from the surplus of the proceeds, the assignees should pay all the promissory notes and bills of exchange specified in a schedule annexed, and every promissory note, bill of ex-change or other security, then due, or which might thereafter become due from *Hutchinson,* to any person or persons, on which *Barney Merry* & Co. [a firm which included one of the plaintiffs] were indorsers, or which they then were, or at any time thereafter should become, liable, or be compelled to pay; also, a certain promissory note, signed by *Hutchinson,* for 720 dollars, endorsed by *Joseph Underwood,* and payable at the *Pawtucket* bank: 3rdly, That all the residue of the proceeds should be applied, by the assignees, to the payment, in whole or in part, of the claims and demands of all other creditors of

*Hutchinson*, who should, within six months, discharge and re-
lease him from their several claims and demands; the pay-
ment to be made in proportion to the several claims so dis-
charged; it being expressly declared, that no creditor should be
entitled to receive a dividend of the proceeds until he should
have signed such discharge. Then followed a power of attor-
ney to the plaintiffs, authorizing them, in *Hutchinson's* name,
to collect, and on receiving, to discharge all the debts due to
him, for the purposes mentioned in this assignment.

The second instrument referred to, was dated the 5th of
*May*, 1824, and was as follows: " Whereas on the 1st day of
*May*, 1824, I, *Andrew Hutchinson*, by indenture, assigned and
transferred to *Jabel Ingraham* and *Barney Merry*, trustees for
the purpose therein named, all my stock in trade and other
property therein named; and whereas doubts as to the validi-
ty of said assignment have been suggested, in consequence of
the clause requiring certain creditors to release, within six
months, their demands, as therein stated: Now, I do hereby
confirm, renew and ratify said assignment, in manner and form
as the same is made, with the exception of said clause, requir-
ing the release of any of my said creditors; and I do hereby
authorize and empower my said assignees to take possession of
all my said property, and pay the same to my preferred credi-
tors therein named, and the balance to pay over to all the rest
of my creditors, equally, in proportion to the amount of their
several and respective debts, whether they execute any release
or not; and I do hereby assign and convey the same to the
said *Ingraham* and *Merry*, in trust for the purpose aforesaid.
In testimony whereof, I have hereunto set my hand and seal,
this 5th day of *May*, 1824.      *Andrew Hutchinson.* [L. S.]

And we, the said *Ingraham* and *Merry* hereby accept the
trust aforesaid.                *Jabel Ingraham.* [L. S.]
                                *Barney Merry.*" [L. S.]

This writing was executed about 20 minutes past 4 o'clock,
P. M. of the day it bore date. *Hutchinson's* books and the key
of his store were delivered to the assignees on the 1st of *May*,
1824. On the 5th of *May*, 1824. the defendant received a let-
ter from *Barney Merry* & Co., dated the day before, from which
the following is an extract: " You will receive, by mail, a let-
ter from the assignees of Mr. *Hutchinson*, notifying you of his
stopping payment on the 1st inst., owing to his having about
2100 dollars of protested drafts coming back upon him." Be-

Ingraham
*v.*
Wheeler.

tween the hours of 8 and 9 o'clock, P. M. on the 6th of *May,* 1824, the defendant, for a just debt due to him from *Hutchinson,* attached the property which is the subject of this suit, while it was in the possession of the defendant as bailiff of *Hutchinson,* About 12 o'clock at noon, on the same day, the assignees delivered into the hands of the defendant's clerk at *North-Stonington,* in this state, a copy of the assignment. There was no proof, that the defendant ever had any notice of the writing dated the 5th of *May,* 1824.

On these facts, the defendant claimed, that no delivery of the property had been given, by the assignor, or possession taken, by the assignees, until after the service of the defendant's attachment. He also claimed, that the bill of sale was fraudulent and void. The judge instructed the jury, that the bill of sale dated the 1st of *May,* was not fraudulent and void on the face of it, but was good and effectual to convey the property ; and if not good of itself, it was made so, by the bill of sale dated the 5th ; that it was not necessary any delivery of the property should be made to the plaintiffs, to pass the property, or notice given to the defendant of the assignment, other than the delivery and notice above-mentioned ; and that unless there was such an unreasonable delay in claiming the property, as evinced to the jury, that the assignment was intended to defraud the creditors of *Hutchinson,* they must find for the plaintiffs ; but if they should find, that there was such unreasonable delay as proved fraud, they must give their verdict for the defendant.

The jury found for the plaintiffs ; and the defendant moved for a new trial, for a misdirection.

*Cleaveland* and *N. F. Dixon,* in support of the motion, contended, 1. That the deed of assignment of the 1st of *May,* was void on the face of it, because it required the creditors to give discharges of their claims as an indispensable condition of their receiving any benefit from the assignment. *Hyslop* v. *Clark &* al 14 *Johns. Rep.* 458. *Austin* & al. v. *Bell,* 20 *Johns. Rep.* 442.

2. That such deed was ineffectual to transfer the property to the assignees, for want of a delivery of the possession of that property. *Tudor* & al v. *Perkins,* 3 *Day* 364. *Merrill* v. *Meachum,* 5 *Day* 341. *Sturtevant* & al. v *Ballard,* 9 *Johns. Rep* 337.

3. That if the first deed was void, it could not be set up, by

New-London,
July,
1826.

the second. *Hyslop* v. *Clarke* & al. 14 *Johns. Rep.* 458. *Merrill* v. *Meachum,* 5 *Day* 341. 347.

*Ingraham v. Wheeler.*

4. That the charge of the court was wrong, in assuming to decide, as matter of law, that possession was unnecessary ;—not that the want of it might be explained.

5. That the charge was also wrong, in deciding, as matter of law, that the deeds were not fraudulent, unless there was such delay in taking possession as evinced fraud.

*Goddard* and *Child,* contra, contended, 1. That the deed of the 1st of *May,* was not fraudulent upon the face of it. *Hatch* v. *Smith* & al. 5 *Mass. Rep.* 42. *Stevens* & al. v. *Bell,* 6 *Mass. Rep.* 339. *Hastings* v. *Baldwin,* 17 *Mass. Rep.* 552. *De Forest* v. *Bacon* & al. 2 *Conn. Rep.* 633.

2. That if the deed of the 1st of *May* was inoperative, yet the subsequent one of the 5th was sufficient to transfer the property. This was executed *bona fide,* and was unexceptionable in its provisions. It was a *distinct* conveyance.

3. That the delivery of the books, which contained an account of the property, and the key of the building, was a sufficient delivery of the property to transfer the title ; the question of fraud being left to the jury, and found for the plaintiffs. *Burows* v. *Stoddard,* 3 *Conn. Rep.* 431. *Salte* & al. v. *Field,* 5 *Term Rep.* 211. *Putnam* v. *Dutch, Mass. Rep.* 287.

4. That no other notice was necessary than that which the defendant received, by the letter which apprized him of *Hutchinson's* failure, and of the assignment.

BRAINARD, J. That a man has a right, for honest purposes, to dispose of his own as he may please, is a principle of natural justice ; and generally, a man cannot dispose of his property for better or more honest purposes, than the payment of his just debts. So long as a man has a sufficiency to discharge his just debts, and makes an honest disposition of it, for that purpose ; or, if he discovers a reluctance on his part to make this disposition among his creditors, so long as they can find, and, by the agency of the law, apply enough to satisfy their demands ; all is well. Here there is no difficulty in law or in equity. But the difficulty arises, when there is a deficiency of assets, and perhaps the want of honesty.

What then is to be done, is the question. It should seem, that the abstract principles of natural justice would dictate,

HARVARD LAW SCHOOL LIBRARY

*New-London,* that the moment a man became insolvent, unable to pay his
July, just debts, the same natural justice would seize the property of
1826. the insolvent, and hold it responsible for the equal benefit of all

Ingraham
*v.*
Wheeler. his creditors.    But this, however pleasant and plausible in the-
ory, has been found, without the aid of some artificial system,
incapable of practice.    It has been found, that where there is
no system of bankrupt law, the maxim *vigilantibus non dormi-
entibus,* must apply ; hence it is, that when a debtor is insolvent,
or in failing circumstances, a creditor, who can, according to
law and the forms of legal process, secure a sufficiency of pro-
perty not under paramount claims, shall be satisfied in whole.

On the same principle it is, that the insolvent has a right to
dispose of his property for the payment of his just debts ; and
to do this with a preference of creditors.    The father has a
right to prefer the son ; the son, the father; the friend, the
friend ; so long as the debts are just, and the property honestly
and fairly applied.

These are principles I early learnt, and have always recogni-
sed.    To admit that an insolvent has a right to prefer his favour-
ite creditor, his friendly indorser, who assisted to support his
buoyancy, perhaps to the deception of the ignorant and incau-
tious, and who had received assurances that in no event he
should suffer, to the claims of his butcher and his baker, I
thought was going far enough.

But to the case under consideration.    *Andrew Hutchinson,*
of *North-Providence,* in the state of *Rhode-Island,* on the 1st
day of *May,* 1824, executed a deed of assignment to *Jabel In-
graham* and *Barney Merry,* of the same place, the present plain-
tiffs, of all his property, in possession and in action, and in
whosesoever hands the same might be, in trust for the use and
benefit especially of certain creditors therein named, with di-
rections to those assignees and trustees, to pay out of the pro-
ceeds the debts and claims of those creditors so named, in full ;
then to apply the residue, should any there be, to the payment
of such other creditors not named, as should, within six months
thereafter, execute discharges in full of their respective de-
mands.    The clause is this : " all the rest and residue of said
proceeds, if any there shall be, after the payments aforesaid,
shall be applied, by said assignees, to the payment, in whole or
in part, of the claims and demands of all other of the creditors
of the said *Andrew,* who shall, within the term of six months
from the date of these presents, discharge the said *Andrew* from

their said claims and demands; the payments to be made in proportion to the several claims so discharged. And it is hereby expressly understood, that no creditor shall be entitled to receive a dividend of the proceeds aforesaid, until he shall have signed such discharge."

The first question is, as to the validity of this deed of assignment. Although there may be some apparent inconsistency and contradiction in some of the authorities on this point, I think the case of *Hyslop* v. *Clarke*, 14 *Johns Rep.* 458. decisive of it. The assignment, in that case, was of a similar character and in similar terms to the present; and the court decided it void under the statute of frauds. I think the principles in that case sound, and applicable to the present, as they respect this point.

No insolvent debtor has a right to prescribe terms to his creditors; to say to these, "take up with the crumbs, on my own terms, or have nothing." Besides, if those creditors do not see fit to comply with such terms, where is this residue? The answer must be, in the hands of the trustees, of the bankrupt's own creation, and for his own use and benefit; a trust necessarily *resulting*. I therefore lay this instrument totally out of the question, as being void; and that upon the face of it.

At this time, the property in question was in the hands of *Wheeler*, the defendant; and had nothing else happened, his subsequent attachment must have held it.

But it appears farther from the motion, that *Wheeler*, the defendant, while in the possession of the property, and before notice of the second assignment, *viz* on the 6th day of *May*, 1824, attached it for a debt of about 600 dollars, a debt admitted to be justly due; and the great and decisive question in the case, is, which of the two has the preference, the attaching creditor without notice of the transfer, or the assignees, as *bona fide* purchasers, on good consideration. This must depend on the circumstances of the case. A purchaser is bound, in every instance, where it is practicable, to take immediate possession of the property; and when he does not, there is a badge of fraud, open however to explanation. Where it is not practicable to take immediate possession, he is bound to do it, or that which is equivalent, in a reasonable time; he is bound to use due diligence. After the execution of the said deed of assignment, the plaintiffs were entitled to a reasonable time, either to give notice of the fact to the bailiff, or to take possession of the pro-

perty.    And whether they  did use this diligence ;  or whether they were so remiss  that  fraud ought  to  be  inferred ;  were questions of fact very properly left by the judge to the jury,

But it appears from the motion, that on the 5th of *May*, 1824, at twenty minutes past four *P. M., Hutchinson* executed another deed of assignment of  the  same  property,  to the same assignees, constituting them trustees for the same general purposes, with the exclusion of the obnoxious conditions imposed on certain creditors in the former.    And the first  question here is, as to the validity of this assignment.

It is said, that this second assignment was only an attempt to resuscitate the first, a mere dead letter.   I think not ; it refers to  the  first, for certain purposes,  necessary for  explication. But, in  my  view,  it is a  new  and  independent instrument ; an assignment, which,  according  to  the  principles already established, and to which I have alluded, was valid, and did transfer all the property of the bankrupt, including that in question, to the assignees,  unless  some  other  person had a  paramount claim or right to it.

The case of  *Waln's*  assignment in  *Lanfear* v. *Sumner*, 17 *Mass. Rep.* 110. seems opposed to these principles.    That was a case of  the  assignment of property then at sea ; and  it was holden, that an attaching creditor should hold, in preference to the assignee,  although  no  negligence was imputed  to him in taking possession of it, after its arrival in port.    But in this state, I believe, that doctrine, to that extent, has never obtained.

To cases of this class we have applied the well known principles applicable  to  ships at sea,  and  other property afloat. An indorsement and delivery of the bill of sale, and other documents evidential of right and ownership, in the one case, and of the bill  of lading,  in the other, has been  deemed sufficient, provided the purchaser or assignee takes possession of the property within a  reasonable  time after its arrival,  or  as soon as reasonably practicable.

The assignees in this case, as *bona fide* purchasers, were entitled to a reasonable time to take possession.

I would not advise a new trial.


HOSMER, Ch. J. and LANMAN and DAGGETT, Js. were of the same opinion.

PETERS, J. was not present when the case was argued, and therefore gave no opinion.

New trial not to be granted.