## SAMUEL OWEN *vs.* FREDERICK ARVIS.

1. A debtor in failing circumstances sold to his son, who was unmarried and lived with him, his real and personal estate for $12,000, and took as security for the purchase money a mortgage on the real estate, valued at $8000, payable in installments, ranging from one to twenty-two years. The

object of the sale, as admitted by the father, and understood by the son, was to place the property beyond the reach of some of the vendor's creditors. Three weeks after the sale, he assigned the mortgage to certain of his creditors, in payment of their debts. *Held*, that the transaction was in contravention of the statute of frauds and of the statute which prohibits preferring creditors by assignment, and was illegal and void as against creditors, whose claims were thereby hindered or delayed.

2. Where a sale is made by a debtor with the knowledge of the vendee that it is for the benefit of a part of the vendor's creditors, and to delay others, and the proceeds of the sale are applied to the payment of a part of the creditors by a deed of assignment, the sale is void as to creditors whose rights are injuriously affected thereby ; but a debtor is not prevented from selling his property to a *bona fide* purchaser for a valuable consideration, and having received the money, from applying it in payment of such debts as he may choose.

3. An assignment or conveyance of property for the benefit of creditors is void, if the property is left to any extent under the control of the debtor or his assignee. The rights of creditors under the assignment must be settled by the deed.

4. A deed receives its efficacy from its execution, and the validity of a sale depends upon circumstances then existing : the subsequent disposition of the proceeds is only material to show the purpose for which the sale was made.

5. A debtor, upon making an assignment for the benefit of his creditors, may stipulate that their claims against him shall be extinguished, but he cannot make that condition a consideration for the assignment.

----

This cause was certified from the Sussex Circuit, and was argued in this court, on a motion by the defendant for a new trial.

James Owen owed individual debts to the amount of $14,000. He had become liable, as surety for one Bross, in a large amount, and Bross had failed. He owned real estate worth $8000, and goods and chattels worth about $4000 more. He also owned bank stock worth $750.

Finding himself unable to pay all his debts, and apprehending suits and executions, he conveyed all his real and personal property, except the bank stock, to his son, Samuel Owen, then living with him, twenty-four years of age, unmarried and without property, for the consideration to pay off an encumbrance of $500 on the land, to pay a debt of $500 due the son for services, and the balance, $11,000, in a bond payable in annual installments of $500 each, the first to be paid on the 1st April, 1856,

the last on the 1st April, 1877, making twenty-two years, with interest from April 1st, 1855, payable annually, which bond was secured by a mortgage on the land, no security being taken on the personal property.

The object of this conveyance, as admitted by the father, and understood by the son at the time, was to prevent his property being taken to pay those debts for which he was security, the Bross debts, and so to control the proceeds that he might apply them to the payment of such of his debts as he felt under the greatest obligation to pay. His insolvency was also known to his son at the time. The father also attempted, with a similar object in view, to transfer the bank stock to the son, upon a representation to the bank which was not true, and the son knew of this attempt and the purpose intended.

Some three weeks afterwards, and in pursuance of his purpose, the father assigned this bond and mortgage to certain of his individual creditors, for the payment of their debts, making certain preferences among them, and upon condition that they accepted it in payment and extinguishment of their claims.

The Bross creditors having obtained judgments, and issued executions against James Owen, placed them in the hands of the sheriff, who, by virtue thereof, seized the goods and chattels so conveyed to Samuel Owen as the property of the defendant in execution. Samuel replevied.

Samuel claims under the sale from his father. The plaintiffs in execution insist that sale was fraudulent and void. The jury found a verdict in favor of Samuel's title, negativing the allegation of fraud in fact. The question submitted to the court is, whether the sale and conveyance was a fraud in law.

The following extract from the charge of the judge at the circuit shows the points insisted on by counsel upon the trial.

"The issue for your determination in this cause is this, where the goods and chattels mentioned in the declaration

the property of Samuel or of James Owen at the time of the levy by the defendant.

The declaration alleges that the defendant wrongfully took and detained them, and demands their restoration. The defendant admits the taking, and seeks to justify it on the ground that he had in his hands, as sheriff, certain executions against James Owen, and by virtue of them, took the property as his.

The pleadings admit the recovery of these judgments, the issuing of the executions, the levy and seizure under them of the property in question by the defendant, as sheriff, leaving but one point in controversy, viz., were the goods and chattels, when levied on, the property of James or of Samuel Owen?

The real estate is not involved in this suit; your verdict can have no legal effect in any controversy about the land, and the creditors who claim a lien upon it under the mortgage given by Samuel Owen cannot legally be affected by your verdict, as it could be no evidence against them. The only parties legally interested here are Samuel Owen, on one side, and the defendant, with the five judgment creditors under whom he justifies, on the other.

Samuel Owen claims the property by virtue of a bill of sale from his father, James Owen, the defendant in the executions. The bill of sale is in due form, and the execution of it has been proved; as between the parties to it, it passed the title in these goods to Samuel, and entitles him to a recovery, unless the defence set up has been proved to your satisfaction.

The defendant insists that although this sale may have been good between the parties, yet that in law it was fraudulent and void as against creditors, as having been made to delay and defeat one large class of them in the collection of their debts.

The defendant represents judgment creditors, and is in a position to set up this defence; it presents a serious and important question, involving property worth over $3000,

and to some, extent the character of these parties, and demanding your most careful investigation.

The defence rests upon our statute for the prevention of frauds and perjuries, passed in 1794. This statute is a substantial re-enactment of an act of the English parliament, passed in the reign of Queen Elizabeth, and has been generally adopted by our American states ; and so strongly does our law abhor all fraudulent dealings, that it may be considered as only a more emphatic expression of what the common law would have pronounced. By the operation of this statute a sale may be good between the parties, and void as against creditors.

Although our law abhors all fraud, yet fraud must be proved, and cannot be presumed, unless there be facts enough to warrant the presumption. The defendant sets up fraud in this sale, and he is bound to prove it to your satisfaction ; but in proving fraud, it is almost always necessary to resort to circumstances, because parties contemplating fraud would rarely, if ever, admit any such intention, and they generally endeavor to comply with all the formalities of the law ; hence I thought a liberal rule should be adopted on both sides in the admission of testimony, that you might have all the light upon this transaction consistent with a liberal application of the rules of evidence ; and hence, too, it is your duty carefully to scrutinize every circumstance attending the sale. A man in failing circumstances has a right, to a certain extent, to prefer creditors ; but if his object in selling his property be not simply to secure one or more creditors, but also to cover up and protect his property, and keep the control of t for the benefit of himself and family, and enable .im to set his creditors at defiance, and if such object was known and participated in by the buyer, then such a sale would in law be fraudulent and void as against creditors, even if a full consideration was agreed to be paid, or was paid.

Although a man has a right, to a certain extent, to pre-

fer creditors, yet if he makes a conveyance or assignment of his property to an assignee in trust for the benefit of his creditors, it must be for the equal benefit of all his creditors, or else it is void.

If, at the execution of a bill of sale of personal property, absolute and unconditional as this one is, there be a secret understanding between the parties that the seller retain the possession of the property, and use and control it as before, and such understanding be carried out, the sale would be void as against creditors.

A good deal has been said about the individual debts of James Owen and those where he was only surety. The law makes no such distinction between debts, but treats them all alike, and they all have an equal claim upon the debtor's property. The man who lends money often lends it more upon the faith of the surety than of the principal, and many of these security debts were the notes of James Owen alone, appearing on their face to be his proper debts, but lent by him to Bross.

Some important facts bearing upon this transaction are not disputed. James Owen, about the 1st of February last, was in possession of real estate and goods and chattels which he then valued at $12,000, and which by other witnesses, and by himself on other occasions, have been valued at a much higher sum ; he also owned some bank stock worth $750. So far as appears from the evidence, this was all his property. He then owed individual debts to the amount of $14,000, besides being surety to a large amount for James Bross, who had recently failed. Finding himself unable to pay all his debts, and apprehending suits and executions, he determined to convey to this plaintiff, his only son, aged about twenty-four, living with him, unmarried, without any property and in no business, his whole real estate and all his goods and chattels for the sum of $11,000, deducting from their valuation of $12,000, $500 on account of an encumbrance on the land, and $500 for a claim of his son for work done since he became of

age, for his father. In pursuance of this determination the property was conveyed; no money was paid, but the son's bond taken for the whole $11,000, payable in annual installments of $500 each, the first to be paid on the first day of April, 1856, and the last on the 1st of April, 1877, making twenty-two years, with interest from April 1st, 1855, payable annually. This bond was secured by a mortgage upon the land alone, then valued by them at $8000, no lien or security being taken on the personal property. Mr. Owen states that his object in this conveyance was to prevent his property being taken to pay those debts where he was surety, and so to control the proceeds that he might apply them to the payment of such of his debts as he felt under the greatest obligation to pay; that this object was known to his son, and fully understood by him, and that his insolvency was also then known to him. In pursuance of this determination, some three weeks afterwards he assigned this bond and mortgage to certain of his individual creditors, whose names you will see by the assignment, which is in evidence, for the payment of their debts, making certain preferences among them, and upon condition that they accepted it in payment and extinguishment of their claims. About the same time he made an attempt to transfer his bank stock to his son; his attorney, in his presence, and therefore with his assent, alleging to the cashier of the bank that it had been sold to his son in payment of his labor. Mr. Owen now admits that this statement was untrue, and that the object of transferring the stock was to enable him to control the proceeds for the payment of such debts as he preferred. This transfer was prevented by the bank, they claiming a lien upon the stock for a debt due to them.

The plaintiff insists that this sale was for the full value of the property; that there was no fraudulent intent in fact between him and his father; and that the sole object was to make the property go as far as possible in payment

Owen v. Arvis.

of the individual debts, as distinguished from the security debts.

The defendant insists that, admitting all this to be true, such a sale is fraudulent in law, and void as against the creditors under whom he claims, for the reason that it was made with the declared, avowed, and admitted intention of hindering and defeating one class of creditors, within which class they fall, thus coming within the very words of the statute of frauds : and also, that it is against the policy of our statute regulating assignments and conveyances by failing debtors to assignees in trust for the payment of debts, which statute, as I have already stated, forbids preferences; that if it be good in law, it would enable a failing debtor to sell all his property to a member of his family on a long credit, and compel his creditors either to go unpaid, or accept their pay at such times, and in such manner and proportions, as the debtor might choose, and that, too, in the bond of a person without means, secured by a mortgage upon only two-thirds of the property sold, he meanwhile at liberty to sell, if he pleased, the movable property, and leave the creditors with only the security of the land. The plaintiff insists that James Owen had a right to prefer creditors, and that if no fraud in fact was intended, it could not be regarded as against public policy nor as a fraud in law.

There are many sales which the law will declare to be fraudulent and void as against creditors, even if no actual fraudulent intent be proved to have existed in the minds of the parties; there is a clear distinction between fraud in law and fraud in fact.

This is certainly a most unusual and extraordinary transaction, and as already intimated, I had serious doubts whether the law will sanction it, even admitting the facts to be as contended by the plaintiff, and admitting that there is no proof of an actual fraudulent intent. My doubts have not been removed by the arguments of counsel and the consideration I have been able to give to

the case, but I am unwilling at this time to put the cause on the ground that this is a fraud in law, preferring that you should pass upon all the facts of the case, and determine whether, in point of fact, there was in this transaction any such fraudulent intention as will make the sale void as to creditors.

After your verdict shall have determined all the facts, this question of fraud in law may, if necessary, be more deliberately examined at another time."

Argued at June Term, 1856, before the CHIEF JUSTICE, and Justices OGDEN, POTTS, and RYERSON, by *Whelpley*, for the motion, and *Linn* and *J. W. Miller*, *contra*.

The CHIEF JUSTICE. Samuel Owen, the plaintiff, claims title to the property in question by virtue of a bill of sale from his father, James Owen. The defendant levied on them, as sheriff of the county of Sussex, by virtue of sundry executions against James Owen, issued after the giving of the bill of sale. The validity of the bill of sale from the father to the son is the only question in controversy. About the first of February, 1855, James Owen was seized and possessed of real and personal estate valued at twelve thousand dollars or more. He owed individual debts amounting to fourteen thousand dollars, besides being surety to a large amount for an individual who had recently failed. Being unable to pay his debts, he sold and conveyed his whole estate, real and personal, to his son, for the consideration of twelve thousand dollars. No money was paid upon the purchase. From the purchase money there was deducted five hundred dollars, on account of an encumbrance of that amount on the land, and five hundred dollars for a claim of the son for work done for his father. For the balance of the consideration, eleven thousand dollars, the son's bond was taken, payable in annual installments of five hundred dollars each; the first installment to be paid on the first of

April, 1856, and the last on the first of April, 1877, with interest payable annually. The bond was secured by a mortgage on the land, then valued at eight thousand dollars, no security being taken on the goods. The object of the conveyance, as stated by the grantor himself, was to prevent his property being taken to pay those debts where he was surety, and so to control the proceeds that he might apply them to the payment of such of his debts as he felt under the greatest obligation to pay. This object and the insolvency of the father was known to the son. About three weeks after the transfer, James Owen assigned the bond and mortgage received from his son in payment for the property to certain of his creditors, in payment of their debts, making preferences among them, and upon condition that they accepted it in payment and extinguishment of their claims.

The question submitted for the consideration of this court is, whether the transfer made by James Owen, on the first of February, 1855, of his real and personal estate to his son Samuel was fraudulent and void in law. In considering this question it must be assumed that the transfer by the father to the son was made for a valuable consideration, and that in point of fact there was no fraud meditated or perpetrated. This point was fairly submitted to the jury, and has been decided by them. However strongly indicative, therefore, the circumstances which surround this transaction may be of the existence of actual fraud, these *indicia* must be disregarded, and it must be assumed, for the purpose of the present inquiry, that in fact no such fraudulent intent existed. The question therefore involves in no way the morality or honesty of the transaction. No moral turpitude is imputed to the parties. The only inquiry is, was the transaction such as the law sanctions, or was it in violation of positive law, an infraction of the rights of the creditors of the grantor, and, as against them, inoperative and void.

From the facts stated in the case certified, it is apparent

that the transfer by James Owen to his son Samuel of all his estate, real and personal, was not an ordinary sale and conveyance for the benefit of the parties. James Owen did not desire to sell the property for his own advantage. He knew that the benefit could not enure to himself. He was indebted to an amount far beyond his ability to pay. Finding himself insolvent, and apprehending executions against his property, he determined to convey to his only son, a member of his family, without property and in no business, his whole real and personal estate. The son was in no condition to become the purchaser. He was destitute of means to make the purchase. He in fact paid nothing for the property. He was aware of his father's insolvency and of the purpose for which the conveyance was made. The terms of the sale were such as no one selling *bona fide* for his own benefit· would have made. Property proved to be worth, at the lowest *cash* estimate, twelve thousand dollars, is sold for that price upon a credit of the entire amount (deducting an encumbrance upon the property and a claim of the purchaser, amounting together to one thousand dollars,) extending from one to twenty-two years. The security for the purchase money was utterly inadequate. A mortgage for eleven thousand dollars was taken upon real estate valued at eight thousand dollars, no security whatever being taken upon the personal property. The purchaser himself was totally irresponsible. It is obvious that the intrinsic value of the securities given as the consideration for the purchase was far less than the value of the property conveyed. No sane man, acting *bona fide* for his own interest, would ever have made such a negotiation. These facts sufficiently evince that the sale was not a *bona fide* sale for the benefit of the vendor. But we are not left to inference upon this point. James Owen, the vendor, himself testifies that his object in making the conveyance was to prevent his property being taken to pay a portion of his debts, and so to control the proceeds as to apply them to the payment of such

debts as he chose. He further testifies that his object in making the conveyance was known to and fully understood by his son. The avowed object of the vendor in making sale was to defeat the claims of certain of his creditors, and to hold the entire proceeds of the sale under his own control, to be applied, at his option, in payment of his debts. The object of the son in making the purchase was not to secure the payment of his own debt, but to enable his father to accomplish the purpose for which the sale was made. Three weeks subsequent to the conveyance, in pursuance of the avowed purpose of making it, the bond and mortgage given as the consideration of the purchase were assigned to certain preferred creditors of James Owen, in consideration of the surrender and extinguishment of their claims against the debtor.

Assuming, as we must do, that there was no actual fraud and no moral turpitude in this transaction, assuming that the purpose of the vendor was to dispose of his property most beneficially for his creditors, and to apply the proceeds fairly in payment of his debts, is the transaction legally valid?

If the validity of this transaction rested alone upon the sale and conveyance by the father to the son; if in fact no part of the proceeds of the sale had been appropriated to the satisfaction of the vendor's debts, there would be no hesitation in pronouncing the transaction not only fraudulent in fact, but fraudulent in law also, as in direct contravention of the statute of frauds. The sale was not *bona fide*. Its avowed purpose and design was to hinder and delay certain of the creditors of the vendor to place the property beyond the reach of the ordinary process of the law, and to leave it in the hands and under the control of the vendor. This purpose was known to and participated in by the vendee. There was collusion for the purpose of delaying creditors, in direct contravention of the statute. The sale is therefore fraudulent and void.

*Johnson* v. *Whitwell*, 7 *Pick.* 71; *Kimball* v. *Thomson*, 4 *Cush.* 441 ; *Borland* v. *Mayo*, 8 *Alabama* 104.

In legal strictness, the validity of the sale must be tested by circumstances independent of the subsequent disposition of the proceeds. Every deed receives its validity from its execution. Whether it is, or is not, an unlawful contract, must depend upon circumstances then existing. *Hatch* v. *Smith*, 5 *Mass.* 50; *Sheldon* v. *Dodge*, 4 *Denio* 217; *Averill* v. *Loucks*, 6 *Barb. Sup. Co. R.* 476. The inquiry is, was the motive which prompted the execution of the deed, and the purpose for which it was executed, lawful ? The subsequent disposition of the proceeds is material only as showing the existence of the purpose, and cannot otherwise affect the transaction.

But admitting that the conveyance by James Owen to his son, and the subsequent assignment of the bond and mortgage to the creditors, constitute but parts of one and the same transaction ; that the sale was in fact made for the benefit of the creditors, and the proceeds honestly applied in payment of their debts, upon the terms specified in the deed of assignment, still the conveyance was illegal and void as against creditors whose claims were hindered or defeated.

Viewed in this aspect, the transaction was in substance an assignment for the benefit of the grantor's creditors. Though not in form a conveyance to an assignee in trust for the creditors of the debtor, and therefore not within the terms of the act, it is so in substance, and therefore in contravention of the policy of the statute, which prohibits all preferences in assignment of one creditor over another. *Nixon's Dig.* 27, § 1. It is not denied that the debtor may make an absolute sale of his property to a *bona fide* purchaser for a valuable consideration, and having received the purchase money, may apply the proceeds at his pleasure in payment of his debts, and that such sale and conveyance will be valid as against the creditors. But the very ground of the objection here is, that the

grantee is not a *bona fide* purchaser for a valuable consideration, but that he took the title knowing that the vendor was insolvent, and that the conveyance was made to him for the very purpose of placing the property of the vendor beyond the reach of his creditors, and leaving it in the hands and under the control of the grantor. This gives character to the whole transaction. The case falls within the spirit of the prohibition against assignments giving preferences, and is in contravention of the policy of that act.

But aside from this objection, the conveyance by James Owen to Samuel Owen is fraudulent in law and void under the second section of the act to prevent frauds and perjuries; because the consideration money of the purchase was left in the hands and under the control of the vendor. The bond and mortgage given by the purchaser for the entire consideration of the purchase was given to the vendor, and was held by him subject to his absolute control. The case, as made by the debtor himself on behalf of the plaintiff, is, that the conveyance was made so that the debtor might control the proceeds, and apply them to the payment of such of his debts as he felt under the greatest obligation to pay. By the well-settled principles of the law, in the absence of all statutes regulating assignments, an assignment or conveyance of property for the benefit of creditors is void, if the property is left to any extent under the control of the vendor or his assignee. The rights of the creditors under the assignment must be fixed by the deed itself.

In *Hyslop* v. *Clarke*, 14 *J. R.* 458, it was held that a clause in the trust deed, requiring the trustees upon a contingency to pay the proceeds of the assigned property to such of the creditors of the assignors as they should appoint, rendered the assignment fraudulent and void. In *Grover* v. *Wakeman*, 11 *Wend.* 203, Sutherland, J., says it has repeatedly been decided that an assignment which does not declare the uses, but reserves to the

assignor the power of subsequently doing it, is fraudulent and void.

In *Sheldon* v. *Dodge*, 4 *Denio* 221, Jewett, J., delivering the opinion of the court said, I take it to be well established, and the doctrine was not controverted on the argument, that a debtor cannot put his property beyond the reach of his creditors, by assigning it to trustees for the payment of his debts, unless at the time he definitely settles their respective rights under the conveyance. The same principle is recognized in *Barnum* v. *Hempstead*, 7 *Paige* 568 ; *Boardman* v. *Halliday*, 10 *Paige* 223 ; *Stong* v. *Skinner*, 4 *Barb. S. C. Rep.* 546 ; *Averill* v. *Loucks*, 6 *Barb. S. C. Rep.* 470. In *Riggs* v. *Murray*, 2 *J. C. R.* 565, Chancellor Kent held that an assignment by a debter of all his property in trust for such creditors as he should designate, and reserving a power to vary the trusts at his pleasure, was fraudulent and void; that the necessary inference from the character of the trust was, that it was intended to delay, hinder or defraud creditors.

The great length of credit given to the purchaser and the insufficiency of the security render this transaction void as against the creditors. The vendor assumed to act on behalf of his creditors, and for their benefit. This is the substance of the transaction, the only ground upon which it can be sustained. If the terms of the trust were reduced to, writing, its true character would be at once perceived. If the purchase money, instead of being secured by bond and mortgage to the vendor upon a credit extending through a period of twenty-two years, to be delivered at such times, upon such terms, and to such of the creditors as the vendor should see fit, had been left in the hands of the vendee in trust upon those precise terms, the assignment would have been void, not only by reason of the power reserved in the hands of the assignee, but because of the unwarrantable delay in appropriating the property to the payment of debts. An assignment for the benefit of credit-

ors upon such terms has been repeatedly adjudged void.  A sale ostensibly for the benefit of creditors, which virtually constitutes the debtor their trustee, can be no more valid or legal than an assignment of similar character which vests the property and the power in the hands of the assignee.  If a debtor may sell his property to a member of his family upon a credit of twenty-two years, why may he not upon a credit of fifty or a hundred years, and thus, during that period, delay the claims of his creditors, and secure the enjoyment of the property to himself or his family ? Such a transaction is a violation of the statute, and void as against creditors, not by reason of a fraudulent intent, evinced by the transaction, but by reason of its inevitable effect in delaying and hindering the claims of creditors.

It has already been intimated that the validity of the deed must depend upon the intention with which it was executed, and cannot depend upon the subsequent disposition of the proceeds.  But assuming that the deed to Samuel Owen, and the subsequent assignment of the bond and mortgage by James Owen to his creditors, constituted but parts of one and the same transaction, and that the assignment may give character to the deed, it remains to inquire whether the disposition of the property by the assignment itself is valid.

The assignment is made to certain creditors of the debtor designated in the schedule, in the proportions therein specified, to the exclusion of all others.  The preferred creditors are to be paid at different periods, running through a period of twenty-two years, as the installments upon the bond and mortgage fall due.  Some are to be paid in full, others are to receive a dividend upon the amount of their claims, one receiving sixty per cent. and another below fifty per cent. The assignment is made to all, in consideration of the surrender and extinguishment of their notes and other evidences of debt.

It is impossible to look at the terms of this arrange-

ment, ostensibly made for the benefit of creditors, without perceiving that, however honestly it may have been intended, it operates in reality to put the entire property of the debtor beyond the reach of his creditors, except upon such terms as he shall dictate, by which the claim of every creditor is hindered and delayed for an extraordinary period of time, and as an instrument of coercion in the hands of the debtor, by which every creditor is constrained to accept the terms offered at the hazard of losing his entire debt. If the transaction is valid, the statute against preferences in assignments is inoperative, and the second section of the statute of frauds a dead letter. Every principle which has been held applicable to assignments for the benefit of creditors is violated by the arrangement.

It has been decided that no condition shall be annexed to an assignment which tends to the prejudice of the creditors who accept. The assignor is restricted to an absolute and unconditional transfer of his effects for the benefit of his creditors. *Owen* v. *Body*, 5 *Ad. & El.* 28; *Van Nest* v. *Yoe et al.*, 1 *Sandf. Ch. R.* 10.

An assignment by a debtor in failing circumstances, containing a provision giving preference to certain creditors over others in the distribution of the assigned property, to depend upon the execution by them of a release to the debtor of all claims against him, was held by the Court of Appeals in New York, affirming the decree of the Chancellor, to be fraudulent and void. *Grover* v. *Wakeman*, 11 *Wend.* 187.

The subject has recently undergone very elaborate examination in many of the American courts, and the coercion of the creditor into a release of the debt, in order to participate in the distribution of the effects of the debtor, has been repeatedly held to avoid the assignment. *Hyslop* v. *Clarke*, 14 *J. R.* 458; *Austin* v. *Bell*, 20 *Johns. R.* 442; *Ingraham* v. *Wheeler*, 6 *Conn.* 283; *Seaving* v. *Brinkerhoff*, 5 *Johns. Ch. R.* 329; *Wakeman* v. *Grover*, 4

Owen v. Arvis.

*Paige* 36 ; *Vannest* v. *Yoe et al.,* 1 *Sand. Ch. R.* 10 ; *Armstrong* v. *Byrne,* 1 *Edwards* 79 ; *Lentilhon* v. *Moffat,* 1 *Edwards* 451 ; *Burd* v. *Smith,* 4 *Dallas* 76 ; *Brown* v. *Knox,* 6 *Mis.* 302 ; *Nesbitt* v. *Digby,* 13 *Illinois R.* 387 ; *Atkinson* v. *Jordan,* 5 *Ohio R.* 293.

In the case of Atkinson *v.* Jordan, the Supreme Court of Ohio, after an elaborate discussion of the principle and a review of the authorities, state the principle to be that a failing creditor shall neither make assignments of his effects for his own benefit, nor lock them up beyond the reach of legal process, unless without consideration he obtains a release of all his debts. No slight variation in the terms of the assignment will affect the principle, where the design is evident to defeat a creditor of his resort to the goods, or compel him to release. 5 *Ohio R.* 304.

There are authorities which adopt a contrary rule, and which hold that a stipulation in the assignment for an unconditional release by the creditor, as a condition of his coming in under the assignment, does not avoid the deed. Most of the cases will be found collected in 2 *Kent's Com.* 533, note *b.* In *Halsey* v. *Whitney,* 4 *Mason* 230, Mr. Justice Story, after a review of the cases, said the weight of authority is in favor of the stipulation. But, he added, I am free to say, that if the question were entirely new, and many estates had not passed upon the faith of such assignments, the strong inclination of my mind would be against the validity of them.

In *Brashear* v. *West,* 7 *Peters* 615, a deed containing a stipulation for a release by the creditors was held valid by the Supreme Court of the United States, in accordance with the rule adopted in Pennsylvania, on the ground that the construction which the courts of that state have put upon their statute of frauds must be received in the courts of the United States. But Chief Justice Marshall, who delivered the opinion of the court, added, we are far from being satisfied that, upon general principles, such a deed ought to be sustained.

In a recent case the Supreme Court of Pennsylvania said: "It would have been better had these conditional assignments been brought within the purview of the thirteenth of Elizabeth, as they might have been originally, and as they have been in some of the states." *Livingston* v. *Bell*, 3 *Watts* 201.

The tendency of the more recent American decisions is strongly against the validity of the stipulation.

The decision of the point is comparatively of little moment in this state, where assignments giving preference are prohibited by law. Where an assignment is made by a debtor of his entire property for the equal benefit of all his creditors, there seems nothing inequitable or unjust in stipulating for a release from the debt, as a condition of being benefited by the assignment. Such a stipulation is in accordance with the principle of all bankrupt laws, and with the legal effect of taking a dividend under an assignment made for the benefit of creditors under the laws of this state.

As applied to the present case, the decision of the point is not essential, inasmuch as there is a feature in the assignment which all the authorities agree renders the stipulation for a release illegal, viz., that no time is prescribed within which the release shall be executed or the notes surrendered. 2 *Kent's Com.* 533 ; 4 *Wash. C. C. R.* 232 ; *Halsey* v. *Whitney,* 4 *Mason* 206 ; 5 *Greenleaf* 245.

By the terms of the assignment, its operation is made to depend upon a surrender of the claims of the several creditors; but no time is specified within which the creditor shall make the surrender, or decide whether he will accept the terms of the release or not. Years may elapse before the election is made. In the meantime the property is locked up beyond the reach of other creditors, whose claims are hindered and delayed. And if the terms of the assignment should not at last be accepted by the creditor, the fund must remain in the hands of the assignee, as a resulting trust for the benefit of the debtor

(*Ingraham* v. *Wheeler*, 6 *Conn.* 283), or the creditor is deprived of his remedy at law, and driven into a court of equity for redress. *Hyslop* v. *Clark*, 14 *Johns. R.* 458.

It cannot be objected that the assignment is made not *upon condition* that the creditor shall surrender his claim, but in *consideration* of such surrender. The legal rights of the parties cannot be made to depend upon the form of the assignment. The creditors are not parties to the instrument. There is no evidence of their assent to its terms. It is held that an actual assent by the creditor to an assignment made for his benefit, is necessary to defeat an attachment and trustee process under the New England practice. *Boyden* v. *Moore*, 11 *Pick. R.* 362; *Widgery* v. *Haskell*, 5 *Mass.* 144; 2 *Kent's Com.* 532. But admitting that the assent of the creditor to an assignment for his benefit will be presumed, his assent to any stipulation or condition not clearly for his benefit will not be presumed. If, then, it be held in strictness that this assignment is made in consideration of the surrender, and is to take effect only upon such surrender being made, it is obvious that no title passed by the assignment, but that the property remains in the hands of the vendor, and subject to his control.

In any aspect in which the transaction may be viewed, the sale and transfer of his estate, real and personal, by James Owen to Samuel Owen, was illegal and void as against his creditors.

I am of opinion that the verdict should be set aside, and a new trial granted, and that the Circuit Court should be advised accordingly.


POTTS, J. The jury having found that there was no fraud in fact in the sale by James Owen to Samuel Owen, the plaintiff below, we are to assume, for the purposes of this motion, that Samuel was a purchaser for full consideration of the goods and chattels in question, and that the transaction is free from any imputation of intentional fraud.

The only question therefore is, whether the transaction is a fraud in law, a transaction which the law construes as fraudulent, against public policy, or in contravention of the letter or spirit of some existing statute, and therefore void?

It is to be observed that the class of creditors who have been preferred in this case, the individual creditors of James Owen, to whom the bond and mortgage was assigned make no complaint of the sale, its manner, its purpose, or its terms. It is understood that they have accepted the provision made for them, and are satisfied with it. Indeed they are not in a situation to impeach the transaction, even if disposed to do so, for creditors who have confirmed even a fraudulent deed by receiving a benefit under it, or have become a party to it, are estopped from afterwards impeaching it. 1 *Am. Ld. Cas.* 84, *notes*, citing *Adlum* v. *Yard*, 1 *Rawle* 163, 171; *Burrows* v. *Alter*, 7 *Missouri* 424; *Butler* v. *Hildreth*, 5 *Metc.* 49.

The execution creditors, who are represented by the sheriff in this action, are those to whom James Owen was indebted, as security for Bross. They complain of the transaction, because the purpose and effect of it was to appropriate the whole of the real and personal property of their debtor to the payment and satisfaction of another class of his creditors, and to defeat a recovery of their claims out of it. Having recovered judgments, they are now in a situation, if the sale in question is set aside as fraudulent, to take preference themselves, by virtue of their liens, over all the other creditors who have not obtained judgments.

They insist that the sale to Samuel Owen was fraudulent and void, for several reasons:

1. That James Owen, when he made it, was in insolvent circumstances, and made the sale with the express intent to defeat a large class of his creditors, these circumstances and this intent being known at the time to the vendee, Samuel Owen.

2. That the sale was of all his property, entirely (except $500) on credit, for an unreasonable time, and upon inadequate security.

3. That some three weeks elapsed after the sale before any disposition of the security taken was made by assignment and transfer to the preferred creditors; so that at the time of the sale it stood as a sale to hinder and defraud creditors, without any disposition being made of the proceeds.

4. That by the terms of the assignment of the bond and mortgage, preferences were made among the creditors, and the stipulation inserted that its acceptance was to be in payment and extinguishment of their claims.

That a debtor in failing circumstances may prefer one creditor, or one class of creditors to another, is too well settled to be for a moment questioned at this day. It is an inherent right, inseparable from the dominion which the law vests in every man over his own property. *Hopkins* v. *Gery*, 7 *Modern* 139; *Holbird* v. *Anderson*, 5 *Term R.* 236; *Wilt* v. *Franklin*, 1 *Binney* 502; *Hendricks* v. *Robinson*, 2 *Johns. Ch. R.* 306; *Stevens* v. *Bell*, 6 *Mass.* 339; *Pearpoint* v. *Graham*, 4 *Wash. C. C. R.* 232; *Hendricks* v. *Mount*, 2 *Southard* 743; *Tillou* v. *Britton*, 4 *Halst.* 135–6; *Hoyt* v. *Hoyt*, 1 *Harr.* 138; *Edgar* v. *Clevenger*, 1 *Green's Ch. R.* 263; *Garr* v. *Hill*, 1 *Stockton's Ch. R.* 215.

But whatever the transaction may be by which this object is sought to be accomplished, whether by sale, or transfer or assignment, it must be *bona fide*, honest, untainted with actual or legal fraud. For there is in general an equity that the honest creditors of an insolvent should be paid *pro ratâ* out of his estate, which the law will regard, and a merit in the diligence of him who first obtains a legal lien, which it will protect against all feigned, covinous and fraudulent contrivances intended to hinder, delay or defraud creditors.

What constitutes legal fraud, as it respects conveyances made by parties in failing circumstances for the purpose

of preferring creditors, has been the subject of much discussion since the statute of Elizabeth for the prevention of frauds and perjuries. Very many of these questions have arisen upon assignments in trust for creditors, and it has repeatedly been held that provisions which tend to hinder and delay creditors will avoid the assignment. Such, for instances, as postponing the period of sale or *payment* for an unreasonable time; the reservation, in the instrument, of a power of revocation; the introduction of such limitations and contingencies as give the debtor a control over the property, and enable him to defeat the conveyance; the selection of an assignee incapable of performing the duties of the trust, or of an insolvent, or one of insufficient character and pecuniary ability to afford assurance that the trust will be properly administered; the introduction of stipulations tending to coerce the creditors unreasonably to their prejudice and the debtor's advantage; a power given or reserved to an assignee or assignor subsequently to declare or alter preferences; the reservation of a use or benefit to the assignor in detriment to the creditors; or the assignment of a part of the debtor's estate, on condition of a release in full. 1 *Am. Lead. Cases* 76, *and notes*.

While, therefore, it is well settled that conveyances made fairly and in good faith, with the honest intention to pay one class of creditors in preference to another, are not treated as void, but as the mere exercise of a right which the law admits and sanctions, yet courts regard with great jealousy the introduction of any element into the transaction which indicates the absence of good faith. 1 *Story's Eq.*, § 369, 370, 31; *Wood* v. *Dixie*, 7 *Adol. & Ellis, N. S.*, 892; *Ingraham* v. *Wheeler*, 6 *Conn.* 283.

In *Jackson* v. *Mather*, 7 *Cowen* 301, there were suspicious circumstances connected with the sale. The grantor continued in the partial possession of the property, and exercised some control over it, the purchaser acting with deference to his directions, making suspicious declarations

Owen v. Arvis.

and taking a fraudulent conveyance of the grantor's personal property, and removing it out of the county to avoid executions against the grantor. The court said, "if it was the intention of the defendant, who was the purchaser, to lend himself for the purpose of hindering, delaying, or defrauding creditors and others; if there was a secret trust; if the money advanced was in reality the grantor's, and put into the grantee's hands to give this the color of a *bona fide* transaction, it is fraudulent." And the verdict having been for the defendant, the court set it aside.

In *Johnson* v. *Whitwell*, 7 *Pick.* 71, a conveyance in trust for creditors was held void, because it turned out to be nothing more, in fact, than a temporary arrangement intended to cover the property and intercept attachments. The court said, "it was not an absolute sale, not an absolute security; for, on the happening of a contingency a new security was to be substituted, and either the first assignment was to be set aside altogether, or if not, a new trust was to be created in favor of creditors who were not parties to the first assignment, and who had no rights, either legal or equitable, under it."

*Ingraham* v. *Wheeler*, 6 *Conn.* 283, decided that where there was an assignment for the benefit of a class of preferred creditors, and then of others on certain conditions, with which they were to comply or get nothing, and if they refused to comply, the balance was to go back to the assignor, it was void.

In *Averill* v. *Loucks*, 6 *Barb. S. C. R.* 470, it was held that an assignment for the benefit of creditors, which substantially reserved to the assignors the right to give future preferences, was fraudulent and void as against the creditors who had not assented to it.

In *Grover* v. *Wakeman*, 11 *Wend.* 189, the court held the assignment void, because it not only gave preferences, but made the interest of the non-preferred creditors depend upon their releasing all their claims.

In *Goodrich* v. *Downs*, 6 *Hill* 438, the assignment was

held void, because it was for the benefit of four creditors, and made no provision for the rest, and contained a stipulation that the surplus should be paid back to the assignor.

In *Sheldon* v. *Dodge*, 4 *Denio* 217, the assignment was avoided, because a class of creditors were to be preferred upon the happening of a future contingency, and a sum of $500 was secured to be paid to a party who was not at the time a creditor.

In *Atkinson* v. *Jordan*, 5 *Ohio R.* 293, it was held that a debtor could not legally couple with an assignment a stipulation for a release in full, as the condition upon which alone the creditors should receive its benefits.

In *Hafner* v. *Irvin*, 1 *Iredell* 490, it was held that the assignment must contain no condition, direct or indirect, controlling the application of the trust funds.

*Nesbitt* v. *Digby*, 13 *Illinois R.* 387, was the case of a conveyance by debtors, who were insolvent, of all their estate to a brother, in consideration of notes of hand payable at from two to six years, with the understanding that the assignee should, at his discretion, apply the proceeds towards paying the debts of the assignors, and it was held to be fraudulent.

These cases serve to show the strictness with which the doctrine of *bona fides* has been applied to transactions of this character. But there are other cases which, in principle, bear a strong analogy to the case now before the court.

In *Borland* v. *Mayo*, 8 *Alabama R.* (*N. S.*) 105, which was the case of a sale by one Walker to Borland, his father-in-law, of his whole estate, when he, Walker, was utterly insolvent, on a long credit, the question was as to the *bona fides* of the sale. The judge who tried the cause charged the jury, "that if the vendor was a debtor in failing circumstances at the time of the sale, and had creditors, including the plaintiff in execution, not provided for by the sale to the claimant, who were hindered in the collection of their demands, and the transfer to the claim-

ant was intended by the vendor and vendee to prevent what they considered a sacrifice of the property by sale under execution, and thereby enable the vendor afterwards to give a preference to his own proper creditors over those to whom he was liable as a surety, then the plaintiff was entitled to a verdict." In other words, that such a sale was fraudulent and void. The verdict was for the plaintiff, and against the purchaser; and the court above, upon full argument, sustained it.

There are other cases which hold that a sale of property made for the purpose of putting it out of the reach of executions is fraudulent; that it is an interference with the creditor's strict right to enforce his claim by execution, as given him by law; and so, also, where the insolvent sells upon long credit, and thus postpones payment to his creditors, by which great injustice may be done, for the creditor may be ruined by being thus delayed in the collection of his debt, the sale will be held fraudulent in law. *Vannest* v. *Yoe,* 1 *Sanf. Ch. R.* 8; *Ward* v. *Trotter,* 3 *Monroe* 1; *Vernon* v. *Morton,* 8 *Dana* 247; *Kimball* v. *Thompson,* 4 *Cushing* 441.

Now, in the case we are considering, not only was the debtor utterly insolvent at the time he made the conveyance of all his property, except the bank stock, to his son, who was worth nothing; not only was the sale made upon a credit unreasonably long, and without any security for the payment of the purchase money of both the real and personal estate, except the mortgage on the realty; but there was a fraudulent attempt made at the same time to transfer the bank stock to the son, upon a misrepresentation known to the son at the time; and after the sale was completed a period of three weeks elapsed before the debtor made any arrangement with any of his creditors. If the sale was fraudulent as against the creditors at the time, no subsequent act of the vendor could make it valid. According to the case, as stated, Mr. Owen admitted that his object in making the conveyance was to prevent his

property being taken to pay those debts for which he was surety, and so to control the proceeds that he might apply them to the payment of such of his debts as he felt under the greatest obligation to pay; and that this object was known to his son, and fully understood by him; and that his insolvency was also known to him. The conduct of men is the best exponent of their intentions. One object of the transaction is patent upon its face. It was to favor the son; to keep the property in the family; to transfer to the son the personalty without security; for if the land was sold for its full value, it could not have been considered as adequate security for the eventual payment of a larger sum than its value. It was to put the property itself out of the reach of creditors, and compel them to take a security by which their debts would be postponed from one to twenty-two years, or get nothing. If this was not a transaction which hindered and delayed creditors within the meaning of the statute, it would be difficult to contrive one which would be such.

But besides, if the law could sanction such a conveyance, if it was a valid conveyance when made, then a debtor might easily defeat his creditors altogether; for there was nothing in the arrangement between the debtor and the purchaser by which any of the creditors obtained a vested interest in the proceeds of the sale. The bond and mortgage was given to the debtor. For three weeks it remained under his exclusive control, and during all that time the creditors were at his mercy. The estate was gone; its proceeds were in the debtor's pocket; and he was at liberty to make what arrangement with them he pleased, or to make no arrangement. And whether he arranged with them or not, one thing was certain, their remedy against the estate was lost, and their debts postponed for a long period of time.

That the debtor subsequently, in pursuance, as he says, of his intention at the time of the conveyance, assigned the mortgage to a portion of his creditors, does not purge

the fraud. If the creditors who accepted the compromise offered them have been thereby placed in an unfortunate position, it is to be regretted; but we might as well repeal the statute of frauds entirely, as to permit it to be thus evaded.

The verdict must be set aside, and a new trial ordered.

Justices OGDEN and RYERSON concurred.

CITED in *Garretson* v. *Kane*, 3 *Dutch.* 211; *Mulford* v. *Peterson*, 6 *Vr.* 136; *Fairchild* v. *Hunt*, 1 *McCar.* 371; *Marlatt* v. *Warwick & Smith*, 4 *C. E. Gr.* 454; *National Bank of the Metropolis* v. *Sprague*, 6 *C. E. Gr.* 540; *Walker* v. *Hill's Ex'rs*, 7 *C. E. Gr.* 528.