15  19
58  82

### PETTIBONE *against* STEVENS and others.

Where *A*, being in failing circumstances, and about to make mortgages of his real estate and an assignment of his personal property, to secure certain creditors, gave his own note to *B* for 800 dollars, and included it in the first mortgage and the assignment, on the sole consideration that *B* should give his note for the same amount to *A*, for the purpose of furnishing *A* with means for the support of himself and family, until he could re-establish himself in business, and to enable him to make some provision for such of his creditors as had no security for their claims; and *B*, having given his note accordingly, afterwards paid thereon 200 dollars, which *A* applied exclusively to his own support; it was held, that the debt of *A* to *B*, thus created, was wholly invalid, as against other *bona fide* creditors, and no part of it could be protected, by the securities held by *B*.

The facts of a transaction being ascertained, whether that transaction was fraudulent or not, is a question of *law;* fraud being the judgment of law on facts and intents.

On a bill of foreclosure, by the first mortgagee, subsequent mortgagees may, for the purpose of reducing the claims of the plaintiff, insist upon the just and faithful application of a collateral security in his hands, to which they are not parties.

Where the collateral security of the first mortgage, consisted of certain chattels assigned to him and others, some of which were attached and taken out of his possession by the creditors of the assignor; and he thereupon brought trespass against such creditors, in which he was ultimately defeated; and it appeared, that this action was brought and prosecuted in good faith, for the benefit of the assignees; it was held, that the expenses of such suit ought to be allowed as part of the mortgage debt.

If a mortgagee first brings an action at law on the note, and afterwards seeks a foreclosure, the costs of such action become a part of the mortgage debt.

THIS was a bill of foreclosure. The facts in the case ap-

Pettibone
*v.*
Stevens.

pear from the report of a committee appointed by the court to ascertain them. They are substantially as follows.

On the 6th of *February*, 1838, *Nathaniel Stevens*, being in failing circumstances, executed and delivered to *Augustus Pettibone, E. Grove Lawrence, Abram C. Hewitt, Palmer Stevens, Roswell Day, Rebecca De Forest* and *Salmon Richards*, a mortgage deed of certain real estate in the town of *Canaan*, the condition of which was, that said *N. Stevens*, being indebted to said *Pettibone*, in a note dated 12th of *June*, 1837, for 491 dollars, 91 cents, on interest, and said *Pettibone*, having indorsed three notes for the benefit of said *Stevens*, [specifying them] amounting to 1050 dollars; said *Stevens* being also indebted to said *Lawrence*, by note dated *February* 6th, 1838, for 800 dollars and interest ; to said *Hewitt*, by book and note, a sum not exceeding 300 dollars; to said *Palmer Stevens* 50 dollars on book, and in four notes, [describing them] amounting to 720 dollars and interest; to said *Day*, by book, in the sum of 400 dollars; to said *Rebecca De Forest*, by note, on which there was due a sum not exceeding 300 dollars ; and to said *Richards*, by note for 200 dollars; if said *N. Stevens* should, within one year from the date of said deed, pay all of said notes and claims, and the amount due thereon, and save said *Pettibone* harmless from each of said indorsements, and from any and all other indorsements he might have made for the benefit of said *N. Stevens*, this deed should be void, but otherwise remain in full force.

On the same day, (the 6th of *February*, 1838,) *Nathaniel Stevens*, further to secure the several debts and claims specified in the condition of said mortgage deed, executed and delivered to the mortgagees an assignment of a large amount of personal property, consisting of the stock of goods then in the store of the assignor, and other chattels, amounting, as estimated in the inventory annexed to and made part of the assignment, to the sum of 4394 dollars, 66 cents, authorizing the assignees to take such property into their possession, and sell the same, and apply the avails thereof on their respective claims, upon condition that if the debts and liabilities specified in said mortgage deed, should be paid and satisfied, by the assignor, the assignment was to be void.

On the 7th of *February*, 1838, *Stevens* executed and delivered to *Elijah S. Deming* and others, a mortgage deed of

the premises described in the first-mentioned mortgage deed, to secure to the grantees their several debts and claims, specified in the condition of such deed.

The deeds were duly acknowledged and recorded. *Stevens* failed to pay the notes indorsed by *Pettibone*, for his accommodation; and *Pettibone* was obliged to pay thereon (including interest,) the sum of 952 dollars, 84 cents. On the other claims specified in the first mortgage there was due to *Pettibone*, by note, 629 dollars, 89 cents; to *Rebecca De Forest*, by two notes, 257 dollars, 78 cents; to *Palmer Stevens*, by two notes, (after applying 51 dollars, 19 cents, paid from the personal property assigned,) 409 dollars, 59 cents; to *Roswell Day*, on book, 454 dollars, 38 cents; and to *Salmon Richards*, by note, 257 dollars, 12 cents, such note being assigned to, and now the property of, *Arah Phelps*. The book debt of 50 dollars and two of the notes mentioned in the condition of the first mortgage deed as due from the mortgagor to *Palmer Stevens*, and the book debt therein mentioned as due to *Abram C. Hewitt*, were disallowed; but it was found, that neither *P. Stevens*, nor any of the other grantees, knew, at the time the deed was executed, that such book debt and two notes in his favour were included therein; nor had any of the grantees, except *Hewitt*, any knowledge that the book debt in his favour was included.

The report proceeded as follows: " As to said note for 800 dollars, mentioned in the condition of said deed as due from said *Stevens* to said *E. Grove Lawrence*, we find, that said *Stevens*, being in failing circumstances, and that well known to said *Lawrence*, executed said note to said *Lawrence*, in consideration of the note of said *Lawrence* executed to the said *Stevens*, on the same day, and for the same sum of 800 dollars, payable four months after date. And the said notes of the said *Stevens* and *Lawrence* were exchanged, with the view and for the purpose, as well on the part of the said *Lawrence* as the said *Stevens*, of providing the said *Stevens* with means for the maintenance and support of himself and family until he should be able to re-establish himself in business, and to enable said *Stevens* to make some provision for those of his creditors whose claims were not embraced in either of said mortgage deeds, or said assignment, styled by said *Stevens*, his *foreign creditors*, and for the creditors of the

late firm of *Andrews & Stevens."* None of the grantees in the deed, except *Lawrence,* had any knowledge of the consideration upon which, or of the object for which, the note to him was given.

After such exchange of notes, *Lawrence* paid on his note to *Stevens* 200 dollars, and that sum only ; which *Stevens* expended in the support of his family, paying over no part thereof to his creditors of any description.

To the several grantees in the second mortgage deed, (dated *February* 7th, 1838,) on the claims thereby secured to them respectively, certain sums were found to be justly due, which it is not necessary here to specify.

After the execution of the mortgage deeds and the assignment, sundry persons named therein as grantees and assignees, caused suits to be instituted against *Stevens,* on the several debts and claims secured to them respectively thereby ; some of which have been prosecuted to final judgment, and others are still pending in court ; and in the prosecution of such suits, certain costs have arisen, which, if in the opinion of the court, they ought to be allowed, are to be added to the amount of their respective claims.

After the assignees named in the assignment took possession of the personal property thereby assigned, a large amount of it was attached, at the suit of *Arah Phelps* and others, creditors of *Stevens,* and was afterwards taken and sold on execution, in satisfaction of the judgments in the suits so instituted. For this property, it was found, that the assignees were not liable, and were not to be held accountable. Of the remainder of said personal property, amounting, at the inventory price, to 1520 dollars, 97 cents, there is still remaining on hand, unsold, in the possession of *Pettibone,* the plaintiff, sundry articles, amounting, at inventory prices, to 152 dollars. Sundry other articles of said personal property, amounting, at inventory prices, to 102 dollars, 75 cents, were, by the carelessness and negligence of the assignees, lost or destroyed ; and they are justly chargeable therewith. The residue of said personal property, (except several articles which were not owned by *Stevens,* at the time of the assignment, and were included therein by mistake,) has been sold and disposed of, by the assignees ; who have received therefor, in cash, the sum of 616 dollars, 40 cents, in book

accounts against sundry individuals, 280 dollars, 74 cents, and in notes against different persons, 134 dollars, 24 cents; which several sums ought also to be charged to the assignees, amounting in all, to 1031 dollars, 11 cents.

*Pettibone* and *Lawrence* have each performed services in the management and sale of the estate so assigned and mortgaged to them and others, and have paid money for taxes accruing thereon, the former, to the value and amount of 83 dollars, 39 cents, and the latter, to the value and amount of 47 dollars, 66 cents.

After said personal property was taken out of the possession of the assignees, by virtue of the attachments thereon, in favour of *Arah Phelps* and others, the assignees instituted an action of trespass against the attaching creditors, for the recovery of damages, for such taking; which action was tried before the superior court, in *August*, 1839, and was defended by such attaching creditors, on the ground that such assignment was fraudulent and void, and on the ground that the assignees permitted *Stevens* to continue in the possession of, and improperly to intermeddle with and controul, said personal property. The jury who tried the cause, returned a verdict for the defendants, on which the court rendered judgment in their favour for their costs. In the preparation and prosecution of this suit, *Pettibone* expended 576 dollars, 92 cents, and bestowed personal services of the value of 50 dollars, making in all, 622 dollars, 92 cents; and *Lawrence* performed services and expended money of the value and to the amount of 71 dollars, 93 cents; which sums ought to be allowed to them respectively, if, in the opinion of the court, they were entitled to charge these expenses.

The case, embracing these facts, was reserved for the advice of this court as to what decree ought to be passed.

*Church*, for the plaintiff.

*Seymour*, for the second mortgagees, defendants.

WILLIAMS, Ch. J. The questions in this case arise upon the report of the committee, appointed on a bill of foreclosure, and were by them submitted for the opinion of the superior court, and by that court reserved for the advice of this court.

*Litchfield,*
June, 1842.
_____

Pettibone
*v.*
Stevens.

The plaintiff was one of the mortgagees in the first mortgage, and also an assignee of personal property, for the benefit of himself and other creditors. The creditors in the second mortgage resist the claim of the plaintiff in three particulars only: 1. That *Lawrence's* debt ought not to be allowed; 2. that the expenses incurred for an action of trespass for the goods assigned, ought not to be allowed; and 3. that the attaching creditors ought not to be allowed the costs incurred in those suits.

1. As to the debt of *Lawrence.* It appears, that on the day on which *Stevens* made the mortgage to the plaintiff and others, his preferred creditors, of his real estate, and the assignment of the goods in the shop, *Lawrence* made his note to *Stevens,* for the sum of 800 dollars, for the purpose of enabling *Stevens* to support himself and family, and to pay such of his foreign creditors as he should choose; and at the same time, *Stevens* gave *Lawrence* a note for the same amount, which is one of the debts attempted to be secured. The question submitted, is, whether *Lawrence* can hold under these securities for the payment of this note. It is not claimed, that *Lawrence* has paid his note: but he has paid the sum of 200 dollars in part thereof. Is a debt thus created, a valid debt, as against other *bona fide* creditors? In other words, can a debtor in failing circumstances, thus provide for himself the means of support, and withdraw so much of his property from the reach of his creditors? Our law provides, that the property of a debtor, with certain exceptions, shall be liable to be taken for the payment of his debts; and every attempt to draw property from the creditor, with a view to prevent or hinder its being taken by attachment or execution, is, in effect, an attempt to defeat that law. If, therefore, a man sells his property, and converts it into money, the more easily to conceal it from his creditors, the person who purchases, knowing of this fact, cannot hold it; but the sale will be considered invalid. In the case before us, the debtor has sold no property; but he has given *Lawrence* his note, in consideration of *Lawrence's* having given him his; and the claim is, that this note, thus given, should be paid from the goods assigned for its security. Other creditors having an interest in this property, contend, that this transaction is, as against them, fraudulent and void. And the court are of that opinion.

Here is a debtor in failing circumstances, reserving, in this way, a considerable fund, for his own support, or at least subject to his own controul, while in appearance he is giving up his property for the payment of his just debts. In form, he is securing a debt to *E. G. Lawrence* ; in fact, he is appropriating so much property for his own use.

*Litchfield,*
*June, 1842.*

Pettibone
*v.*
Stevens.

If this was, by the terms of the agreement, to have been appropriated entirely to his support, it could hardly be denied, that it would have been invalid. But as it remains at the option of the debtor how much shall be applied to that object, and how much to his creditors, he must have the right to direct in what manner the apportionment shall be made, and he alone. Of course, it may all be appropriated for his own benefit.

But had the object been, to leave this fund in the hands of the debtor, to appropriate it for distribution among creditors not named, we cannot think it could have been supported. It would be a secret trust for persons unknown, under the form of a debt to *Lawrence.* He would, in effect, be a trustee for *Stevens,* or certain unnamed creditors of *Stevens.* The mortgage would furnish no evidence of the real nature of the transaction ; and such conveyances would become dangerous channels of fraud. If the intention was really such as was suggested, the means of carrying it into effect are such as the law cannot tolerate. No creditor is named ; no amount is given ; nothing, in short, to give any clew to the real transaction, or to limit the discretion of the trustee. If the real character of this transaction appeared upon the face of the instrument, it would appear that *Lawrence* was in fact holding so much of this property to await the order and disposition of *Stevens,* the debtor himself. Such a deed of assignment was holden void, in *Massachusetts. Harris* & al. v. *Sumner,* 2 *Pick.* 129. And it could not stand upon higher ground, because the transanction was more covert. *Platt* v. *Brown,* 16 *Pick.* 553.

It has been decided in this court, that if an insolvent debtor makes an assignment for the benefit of his creditors, with a condition that it shall be void, as to those creditors who neglected to sign a discharge, such assignment is in law fraudulent. And one reason given, is, that if a creditor refuses to accept it, there is a trust resulting to the debtor. *Ingraham*

v. *Wheeler*, 6 *Conn. Rep.* 283. The same principle is recognized in *Massachusetts.* *Widgery* & al. v. *Haskell*, 5 *Mass. Rep.* 144. 151. And in *New-York.* *Hyslop* & al. v. *Clarke* & al. 14 *Johns. Rep.* 458. *Grover* & al. v. *Wakeman*, 11 *Wend.* 187. Here is clearly a trust for the assignor, and is, therefore, within the principle of those cases.

It is objected that the committee do not find, that it was done fraudulently. But they find the facts, and submit to the court, for their opinion, what is the legal inference from them ; and the rule of law is, that when the facts are ascertained, fraud is a question of law from those facts : *it is the judgment of law on facts and intents.* 9 *Johns. Rep.* 342. 7 *Cowen* 304. This principle must have been recognized in the cases cited above of *Harris* v. *Sumner*, and *Ingraham* v. *Wheeler.* This is not a question whether there was actual fraud, but whether the transaction is not one of the kind calculated to delay, hinder or defraud creditors ; and we have no hesitation in saying, that " if tolerated, it would become an inlet to fraud, and lead to all imaginable abuse."

But it is claimed, that the 200 dollars, which *Lawrence* has paid, should be allowed. The consequence of this would be, to encourage the party to go on, and perfect the work which we have pronounced fraudulent, and to compensate him for doing the act, which, we say, he never ought to have undertaken. No part of this claim can be allowed.

2. As to the expenses incurred in the action of trespass. It is to be remarked, that the creditors in the second mortgage, who defend here, have nothing directly to do with the goods assigned. But as they have an interest in reducing the debts of the creditors named in the first mortgage, they are permitted to show what the debts are, and what ought to be deducted from them, as they, in this way, lessened the claim upon the real estate in which they are interested. They may show, that the property has been wasted, or not managed with good faith. In this case, they show, that the assignees have brought an action of trespass for the goods assigned, which were attached by creditors, and have failed to recover ; and therefore, they say, they ought not to be allowed their costs and expenses. *Pettibone*, one of these assignees, had a fair and *bona fide* debt ; and it is not claimed he knew of any fact in the assignment, which would tend to make it void. It

would seem, therefore, to be his duty to try the question, both for his own sake, and that of the other creditors in the assignment, for whom he acted ; and if his co-assignee is not equally faultless, this does not seem to be the mode of trying that question. If this suit was brought and prosecuted in good faith, for the creditors, we think that the attending expenses should be allowed, although the trustees have failed in the suit.

It is said, however, that one ground of defence, by the attaching creditors, was, that the assignees left those goods in the possession of *Stevens ;* in consequence of which, their action was defeated. All that appears before us, upon that point, is, that this was one of the grounds of defence. If proved, it would tend to show, that the assignees had not conducted *bona fide.* That fact, however, ought to appear : we cannot presume it, because it was claimed.

3. Another question is, whether the creditors named in the mortgage deeds, who have brought suits, are entitled to their taxed costs. It has always been holden, that a creditor having a mortgage, might pursue his several remedies, or elect one, at his pleasure ; and when he has pursued his remedy upon his note, the costs have been considered and allowed, as part of the mortgage debt ; and we see no reason, in this case, for adopting a different rule.

We have thus disposed of the questions submitted to us ; but we would not be understood as impliedly deciding any other question which might have been made upon this report. We have not thought it our duty to inquire, whether any other question fairly arose upon this record, than those expressly presented for our consideration.

In this opinion the other Judges concurred.

Decree accordingly.