CRAWFORD ALLEN *v.* CHARLES T. ROBBINS, Trustee, and others.

A mortgagee in trust, with a power of sale, may hold the mortgaged estate against a purchaser of the equity from the assignees of the mortgagor, as charged with the expenses of a sale by him attempted and discontinued in accordance with his trust, and of obtaining necessary legal advice in the execution of the trust, under the head of just allowances; but, unless expressly stipulated in the mortgage, cannot hold it charged with any commissions or fees for his own services.

Where the assignees of a mortgaged estate sold the equity subject to the mortgage, at auction, and in the conditions of sale described the mortgage as amounting to a sum certain, for principal and interest, but, in the same conditions, allowed to the purchaser ten days after the sale, within which to examine the title, promising to cure any objection to it or to annul the sale, and the purchaser, long subsequent to the sale, took from the assignees a quitclaim deed, without warranty, of their title to the estate subject to the mortgage; *Held,* upon demurrer to a bill by the purchaser against the assignees to compel them to pay, in his discharge, certain expenses of the mortgagee which formed just allowances to him under the mortgage, that, as the bill charged no fraud in the assignees in their said misrepresentation, the above facts stated in it would not sustain a suit, either at law or in equity.

BILL IN EQUITY by the purchaser, at an assignees' sale, of the equity of redemption in the Georgia Mills estate, so called, filed against the mortgagee in trust of said estate, and the assignees who sold the same subject to the mortgage, to compel a discharge of the mortgage, and the payment of damages for not before discharging the same, and a satisfaction of the remaining claims under the mortgage, if any, by the assignees.

The cause came on to be heard, and from the pleadings, exhibits, and an admission, it appeared, that, on the 13th day of November, 1857, Zachariah Allen, being then the owner of the Georgia Mills estate, situated in Smithfield, on both sides of the Woonasquatucket river, mortgaged the same, with its machinery, in fee, to Charles T. Robbins, cashier of the Merchants Bank of Providence, in trust, to secure the payment of eight bills of exchange, amounting in the whole to the sum of fifty thousand dollars, and bearing even date with the mortgage, which bills were drawn by Allen upon Edward J. Cushing, and by him accepted for Allen's accommodation, and were payable six months

Allen *v.* Robbins, trustee, and others.

after date. The mortgage contained a stipulation by Allen that he would keep the mortgaged premises insured against fire in the sum of one hundred thousand dollars, at the least, and would assign the policies to Robbins, and in case of his default so to do, Robbins might keep on foot such insurance,—any premiums which he might pay being a charge under the mortgage. The condition of the mortgage provided, that in case of default in the payment of the bills of exchange or of their renewals, or in keeping the premises insured, and the default should continue for the space of thirty days, it should be lawful for Robbins, cashier, his heirs and assigns, " upon the request, in writing, for that purpose, of any one or more of the person or persons, being then the holder or holders of any one or more of the said eight bills of exchange, &c., to sell the said granted and bargained premises, either together or in parcels, by public auction or private contract; he or they first giving, after the expiration of said thirty days, sixty days' notice of such sale in one of the public newspapers printed and published in said Providence; and also, that it shall be lawful for the said Charles T. Robbins, cashier, as aforesaid, his heirs and assigns, to continue, adjourn, or rescind any such sale, from time to time, and for all and any of the purposes aforesaid, to make, execute, and perfect all such contracts, assurances in the law, matters and things, as to the said Charles T. Robbins, cashier as aforesaid, his heirs and assigns, shall seem just and reasonable; and it is hereby declared, that the said Charles T. Robbins, cashier as aforesaid, his heirs and assigns, out of the moneys to arise from any such sale or sales as aforesaid, shall pay all the expenses attending the execution of the provisions herein contained, and also all the said eight bills of exchange, &c., unto the person or persons who shall then be the holder or holders thereof, and shall pay the residue, if any, of the said moneys to the said Zachariah Allen, my heirs and assigns."

It further appeared, that, on the 20th of December, 1858, default having been made in the payment of said bills of exchange, Robbins, at the request of a holder of one of them, advertised the mortgaged property for sale by auction on the 21st day of February, 1859, hired an auctioneer, and made other preparations for the sale; and on the 17th day of said February, the party making

the request having in the meantime sold and transferred his claim under the mortgage, Robbins, at the request of the other holders of the bills of exchange secured by the mortgage, withdrew the advertisement, and postponed the sale indefinitely; and that, in this proceeding and in legal advice taken to guide him therein, he had expended the sum of one hundred and thirty-five dollars and fifty cents.

On the 30th day of September, 1858, Zachariah Allen having become insolvent, made a general assignment of all his property, real and personal, including his interest in the Georgia Mills estate, to the defendants, William M. Bailey and George C. Nightingale, in trust, for the benefit of his creditors, with the usual provisions for the sale of the property and the distribution of its proceeds. On the 17th day of March, 1859, the assignees sold the Georgia Mills estate, with the machinery, at auction, to the plaintiff, as the highest bidder therefor, for the sum of $40,000, subject to three mortgages, including that to Robbins; and in describing this mortgage in the terms of sale, described it as,—

"To Charles T. Robbins, trustee, dated Nov. 13, 1857, for six months, renewed May 15, 1858, for six months, for . . . . . . $50,000 00
"121 days' interest, from Nov. 18, 1858, to March 19, 1859, . . . . . . 1,008 33

$51,008 33"

In the same terms of sale, there was a clause to the following effect:—

"The title to the property has been examined, and is believed to be undoubted. The purchaser will be allowed ten days to examine the same, and make any valid objection to the title, which the assignees will remove, or annul the sale."

Prior to the sale, Robbins, the mortgagee in trust, by his letter to the assignees, dated March 16, 1859, gave notice to them that his expenses and compensation as mortgagee in trust, for which he claimed a lien on the estate, amounted to $632.50, and was to be increased for future services and expenses; and in his answer

to the bill, he claimed the sum of $135.50, for the expenses attending his attempted sale under the mortgage, and the sum of $750, for his general compensation as mortgagee in trust.

The plaintiff received his deed from the assignees, of the property bought by him at the auction, on the 12th day of October, 1859, and it was admitted had paid off all the bills of exchange and their renewals, of Zachariah Allen, included in the mortgage, but resisting the above claim of the mortgagee, for expenses and services, claimed a discharge of the mortgage from him, or if anything was due to him, that it should be paid by the assignees, on account of their representation in the terms of sale of the amount due upon the mortgage. To the bill, which substantially stated the above facts, so far as they were directed against the assignees they demurred, for want of equity, multifariousness, and misjoinder of causes of action, and of defendants.

Robbins answered the bill, setting up his above claim for expenses and compensation, and demurred, for want of equity, to the relief prayed against him for damages for not discharging the mortgage, as properly, under the statute, the subject of an action at law.

*R. W. & T. C. Greene, for the complainant :—*

I. A mortgagee is not entitled to charge for services unless provision for such purpose is made in the mortgage. This is the practice in Rhode Island.

II. The mortgage deed provides as follows : " And it is hereby declared that the said Charles T. Robbins, cashier as aforesaid, his heirs and assigns, shall, out of the moneys to arise from any such sale or sales as aforesaid, pay all the expenses attending the execution of the provisions herein contained." Under this clause, no claim for services by the mortgagee can be set up. The expenses incurred by the mortgagee come within the provisions of the deed. The only question is,—Who is to pay them ?

III. If anything is to be paid the mortgagee for services or expenses, it is no charge against the plaintiff, inasmuch as he purchased the mortgaged estate, without notice of any such claim from the mortgagee or otherwise. See exhibit B, and the portions of the bill relating thereto.

IV. The assignees, at the time of the auction sale of the Georgia

Mills estate, gave notice, in writing, of the incumbrances thereon and the amount due on said incumbrances, but made no reference, in writing or otherwise, to any charges made by the defendant, Robbins, for services, expenses, or otherwise.

V. As between the plaintiff and the assignees, the assignees are the proper parties to pay the charges of the defendant, Robbins.

VI. The court having possession of the cause, may award damages to be paid to the plaintiff; such damages, also, as the amount of the " expenses attending the execution of the provisions of" the mortgage, to be determined by a master.

*Hayes, for the defendant, Robbins :*—

I. Damages for refusal to cancel a mortgage cannot be recovered in this State, in a court of equity.

II. A trustee is entitled to recover for all reasonable expenses incurred in the conduct of the trust, and no express declaration therein is necessary to create that right. *Brocksopp* v. *Barnes,* 5 Mad. Ch. 90; *Worral* v. *Harford,* 8 Vesey, 8; *Dawson* v. *Clarke,* 2 M. & Cr. 428; *Ex parte Lovegrove,* 3 D. & C. 763; *Fearns* v. *Young,* 10 Vesey, 184; Hill on Trustees, 573; *Jewett* v. *Woodward,* 1 Edw. Ch. 200.

III. Trustees are entitled to a reasonable compensation for their services. *Meacham* v. *Sternes,* 9 Paige Ch. 403; *Ringgold* v. *Ringgold,* 1 Har. & J. 83; *Boyd* v. *Hawkins,* 2 Dev. Eq. 334; Hill on Trustees, n. to p. 574; note to case *Robinson* v. *Pett,* and cases there cited, 2 Eq. Lead. Ca. 435.

IV. Trustees have a lien on the trust estate for their expenses, &c., and will not be compelled to part with the legal estate until the claims are discharged. *Worral* v. *Harford,* 8 Vesey, 7; *Hall* v. *Laver,* 1 Hare, 577; *Barker* v. *Parkenhorn,* 2 Wash. C. C. 142; *Jones* v. *Dawson,* 19 Alabama, 672; Hill on Trustees, 567.

*James Tillinghast, for the assignees of Z. Allen :*—

I. The relation between Z. Allen and Robbins was merely the ordinary relation of mortgagor and mortgagee; and it is well settled in this State, as elsewhere, that a mortgagee cannot charge for his services as against the mortgagor. Robbins, if trustee at all, was trustee for the holders of the drafts secured by the mortgage, not for Mr. Allen; and if entitled to compensation, must look to his cestuis for it; particularly, as the contingency never

has arisen, to wit, a sale under the power, under which he was entitled to hold for anything more than the mortgage debt as against Mr. Allen. Compare *Neptune Ins. Co.* v. *Dorsey*, 3 Md. Chan. Decis. 334 ; Hill on Trust. 571, marg. top. p. 852.

II. Even if Robbins be entitled to retain his mortgage title for his compensation, the complainant shows no ground or privity between himself and the assignees, to entitle him to call upon them for this payment. They, as assignees, have sold and conveyed the estate to him, and he has accepted the conveyance without any covenant on their part, and no fraud is charged.

III. The bill is demurrable for multifariousness and misjoinder of defendants. The claims against Robbins and the assignees are entirely distinct ; and the claims on Robbins involve matters in which the assignees have no concern, to wit, whether or not the mortgage acceptances have been paid, damages against Robbins for refusing to discharge the mortgage, &c., &c.

IV. If the complainant has any claim against the assignees, he has a full and adequate remedy at law.

BRAYTON, J. The bill, in this case, prays against the defendant, Robbins, that he may be decreed to release and discharge the mortgage held by him, to the plaintiff, who has become the purchaser of the equity of redemption. It is alleged, and by the defendant admitted, that all the debts secured by the mortgage have been paid and discharged. It is also alleged and admitted, that the plaintiff has requested a release and discharge of the mortgage by the defendant, and that the defendant has refused to execute it until certain charges, which he, the defendant, claims are reasonable charges against the estate in his hands, have been paid. These charges, as set forth in the exhibit to the bill and to the answer, are thus stated :—

| | | | | | | |
|---|---|---|---|---|---|---|
| " Cash paid, auction fees, | . | . | . | . | . | $7 00 |
| Advertising, | . | . | . | . | . | 28 50 |
| Counsel fees, | . | . | . | . | . | 100 00 |
| My services as mortgagee, | . | . | . | . | . | 750 00 |

$885 50 "

The defendant, Robbins, claims that all these are properly

chargeable upon the estate, under the head of just allowances. The plaintiff insists that no one of these items is so chargeable, and that the defendant should therefore be decreed to release unconditionally.

To the larger item in this account, viz., the charge for services as mortgagee, the objection of the plaintiff rests upon much stronger ground than to the items for expenses incurred. The general rule as to trustees, that a trustee shall not be allowed to profit by the trust, excludes him from claiming compensation for his services in the execution of his trusts; and he is, therefore, not allowed for his time, trouble, or personal labor. Hill on Trustees, 574; Lewin on Trusts, 546. And this rule is applied to all persons acting in a fiduciary relation, executors, guardians, and others; and to mortgagees, though they may be trustees in the strict sense of that term. The reason given why a mortgagee shall not be allowed for time and services, is, that he stands so nearly in the relation of a trustee, strictly so called,— that he is often called a trustee. Though, in this country, the rule has been very much relaxed; and by force of statutes, in some states, and by decision of their courts, in others, allowances of this kind have been made to executors, administrators, guardians, and to trustees properly such, it seems to have been adhered to with great strictness in relation to mortgagees; and this, because to the fiduciary relation existing between mortgagor and mortgagee is superadded that of debtor and creditor.

The defendant, Robbins, though he held the mortgage in trust for the holders of the bills of exchange secured by it, and was to them as a trustee in the strictness of that term, yet, as to the owner of the equity of redemption, and in so far as he held the estate as security for the debts, he held the relation of mortgagee only; standing precisely in the condition of the holders of those debts, whose trustee he is. He is entitled, therefore, to claim neither more nor less than he would be if he himself were holder for the security of his own debt; or, than the holders of these drafts would be entitled to claim, had the mortgage been made directly to them. The rule would exclude both him and them from compensation for services, as against the owner of the equity. The services here charged must be disallowed, though

the trustee might, under the relaxed rules as to trustees, with great justice, claim such allowance against his cestuis, the holders of the drafts, for whom these services were, in fact, rendered.

The other items of charge against the estate are items not for services, but for expenses incurred and paid by Robbins, in the execution of the power of sale given in the mortgage. Here, again, the rules applicable to trustees and to those acting in a fiduciary capacity, though they exclude compensation, generally allow him, under the head of just allowances, for all expenses in the execution of his trust, or in the performance of duties arising out of the situation in which he is placed,—all proper expenses out of pocket ; Hill on Trustees, 576, and cases cited ; *Attorney General* v. *Mayor of Norwich*, 2 M. & Cr., 406 ; and these, whether any express provision be made for it, or not, in the deed creating the trust ; *Worrall* v. *Harford*, 8 Ves. 8 ; and though the expenses be for taking opinions, and procuring directions necessary to the due execution of the trust ; *Fearns* v. *Young*, 10 Ves. 184 ; and see *Trott* v. *Dawson*, 1 P. W. 780, which was a bill to compel the trustee to convey the trust estate, there being no lien thereon except for moneys expended by the trustee in relation to the trust. The rule as to expenses, applicable to trustees, has been applied to a mortgagee, so far as he has expended money in supporting the right of the mortgagor to the estate, where his title has been impeached ; and such expenses are properly chargeable to the estate. *Godfrey* v. *Watson*, 3 Atk. 517. So, of expenses of suit, to enforce administration of collateral securities, though the suit fail. *Pettibone* v. *Stevens*, 15 Conn. 19. In *Neale* v. *Haythorp*, 3 Bland. 591, it is said, that the rule as to trustees is applied to a mortgagee in possession, who is regarded as a trustee, and that it is the course of the court, under the head of just allowances, to allow him for all necessary expenses incurred for the defence, relief, protection, or repairs of the estate, and fees for taking opinions and procuring directions necessary to the due execution of the trust.

The defendant was not a mere mortgagee, but was clothed with power to sell the equity of redemption, and thereby to foreclose the mortgage. In such case, he is treated as a trustee for sale. In 1 Sugden on Vendors, 55, it is said, that when the seller is a trus-

tee for sale, as a mortgagee with a power of sale, he is to consider not only his obligation to the purchaser, but his liability to his *cestui que trust*, or mortgagor. In Anonymous, 6 Mad. 15, he was held as such trustee, and in giving the notice of sale, his duty was said to be to attend equally to the interest of both his *cestuis que trust*, and to apprise both of his intention to sell, so that each might take means to procure an advantageous sale. His character seems to have been viewed in the same light in *Arnold* v. *Garner*, 2 Phil. 231, where the mortgagees of certain ships sold a portion of them under the power contained in the mortgage, and claimed brokerage on the sales. The chancellor held, that acting under the power in the deed, although entitled as trustees to all outgoings, they were not entitled, in that character, to commissions for the discharge of a duty which, as trustees, they were bound to perform. The case cited at the hearing, to show that the mortgagee could claim for neither services nor expenses against the estate, is not an authority against the allowance for expenses. *Neptune Ins. Co.* v. *Dorsey*, 3 Md. Ch. 334. This was a mortgage with power of sale. The power, however, was executed under the direction of the court, according to the statute in Maryland. In such case, the trustee for sale is allowed 5 per cent. In this particular case, the owner of the equity requested an adjournment of the sale, and agreed with the trustee to pay the usual commissions for sale, and the expenses of the adjournment; and the sale was adjourned, and the trustee claimed an addition to the commissions for the actual sale. This was disallowed; the court saying, that it was not chargeable to the estate as against a subsequent mortgagee, there being no surplus to go to the owner of the equity, though it might perhaps be allowed against such surplus, were there any such. Though the commissions were disallowed, the court said that the expenses of the ineffectual sale would nevertheless be allowed the trustee,—distinguishing between commissions for services, and expenses in executing the trust.

The mortgage to Robbins was made to secure the payment of eight several bills of exchange, held by different persons. Upon default of payment for thirty days, he was authorized and empowered, upon the application in writing of any one holder of

Allen v. Robbins, trustee, and others.

either of these bills, to advertise the estate for sale ; and power was also given him by the deed to continue and adjourn the sale, in his discretion, and in his discretion also, to discontinue and rescind it, and not proceed to an actual sale. This discretion was, of course, to be exercised in good faith towards the mortgagor, whether he elected to sell on the first notice, or to continue and adjourn the sale to another time, or to withdraw the advertisement, and not proceed to foreclose the mortgage by sale of the equity of redemption. He was authorized and directed to pay out of the proceeds of sale all the expenses attending the execution of the provisions therein contained. The defendant, Robbins, has precisely pursued this power in relation to the sale. At the request of one only of the persons holding a draft, he advertised the property for sale; and when it was no longer desired by that holder, and the other holders of like debts requested him to forbear further proceeding to effect what may well be presumed to be against the interest of the mortgagor,—a sale of the estate,—he rescinded the sale according to the power, and in good faith. The mortgagor contemplated, and provided, that the mortgagee might incur expenses in advertising the estate for sale, and yet not sell. He might design in good faith to sell the estate of the mortgagor, and yet it might become desirable not to sell. This was probably in the contemplation of the parties ; and it might be, that the mortgagor designed to take away every inducement to the exercise of that power by the mortgagee, and to discourage a sale even after notice. The expenses of advertising and for auctioneer's fees were incurred strictly in the execution of the power, and, by the general rule, should be allowed ; and the counsel fees, if paid for advice necessary to guide him in the discharge of his duty in relation to the sale, would fall within the same rule, and should be allowed.

The charge against the assignees, Nightingale and Bailey, as made by the bill, is, that they represented, in their conditions of sale, that there was due upon the mortgage which the purchaser was to assume, the sum of $50,000, as principal, and interest thereon to the 19th day of March, 1859, which amounted to the further sum of $1,008.33 ; and that the plaintiff believed that no more was due on said mortgage, and in full faith that no more

was due, bid upon said estate, and became the purchaser thereof for the sum of $40,000 ; that he paid the said sum of $40,000 to the said assignees and received a deed of the premises, and has paid upon said mortgage all the debts secured thereby, to the amount of said sum of $51,008.33 ; that he is still unable to procure a release of said mortgage, because, over and beyond the mortgage debt, the mortgagee in trust refuses to release until a further sum, which he deems to be due him for services and expenses in the execution of the trust, shall be paid, and that he has suffered damage thereby ; and he prays, that said assignees may be directed to pay and discharge said claim of the mortgagee.    To this charge in the bill the assignees have demurred.

In considering the question raised by the demurrer, we must assume that the claim of Robbins, the mortgagee in trust, is a valid claim, and constitutes a lien upon the estate mortgaged. The question then arises, do the allegations in the plaintiff's bill show an equity against the defendant assignees, which this court can and ought to enforce ?

The estate advertised for sale was stated, in the conditions of sale, as the fee of the entire property, including all machinery and tools and implements in actual use, free of dower and of all incumbrances excepting the following mortgages, stating the mortgage to Robbins, as alleged in the bill, with the principal, $50,000, and interest, $1,008.33, due thereon ; and after stating two other mortgages, with the amount due thereon, the conditions set out, that the title to the property has been examined, and is believed to be undoubted, and that the purchaser will be allowed ten days to examine the same, and make any valid objection to the title, which the assignees will remove, or annul the sale.

The conveyance was then made subject to the mortgages named ; and there was no warranty of title, or covenant against other incumbrances.    The purchasers were notified to examine the title, and enquire for themselves if the representations made as to it, were, in any respect, erroneous or mistaken ; and not to rely upon the opinions of the assignees.    After the expiration of the ten days, the plaintiff accepted the conveyance tendered by the assignees, and which conveys to the plaintiff all the right, title, and interest in the estate described, which was conveyed to

them by Zachariah Allen, as the deed states, "subject, nevertheless, to the said several mortgages," (referring to the mortgages mentioned in the conditions of sale and without giving the amount due thereon,) "upon which terms this deed is given and accepted by the said grantee." The plaintiff thus assumed the payment of these mortgages, whatever might be their amount, to pay everything that might be justly due thereon. It is quite too late, now, after assuming the payment unconditionally, to object that it is more than he believed, and that too, when he had time given for the purpose of examination for himself. The plaintiff does not seem to have a case which would give him a remedy either at law or in equity; for, though representations may be made which are untrue, if they be make in good faith, they furnish no ground for an action of deceit or for fraud. *Haycraft* v. *Creasy*, 2 East. 92.

It is not necessary to consider the demurrer to the bill by Robbins, in so far as it claims damages for not discharging the mortgage. It is very clear, that whilst anything remains charged against the estate, the plaintiff can have no claim for damages for refusal to release the mortgage, whatever loss may fall upon him in consequence.

As it is now agreed that the counsel fee of one hundred dollars was incurred by the defendant, Robbins, in advice necessary to enable him to execute the power of sale contained in the mortgage, let a decree be entered ordering Robbins to cancel the mortgage executed by Zachariah Allen to him, on the 13th day November, 1857, upon being paid, by the complainant, the expenses for advertising, auction fees and the above counsel fee, amounting in all to the sum of $135.50,—Robbins further to recover his costs of this suit,—and dismissing the bill with costs, as against William M. Bailey and George C. Nighingale, assignees of Zachariah Allen.